UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-4370(DSD/SRN)

Derek D. Reiter,

       Plaintiff,

v.                                                   **ORDER**

Recall Corporation and
Recall Secure Destruction
Services, Inc.,

       Defendants.

    Michelle D. Hurley, Esq., Steven Theesfeld, Esq. and Yost & Baill, 220 South Sixth Street, Suite 2050, Minneapolis, MN 55402, counsel for plaintiff.

    Daniel L. Scott, Esq., Yvonne Shorts, Esq. and Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101 and Angela Mahdi, Esq., Kurt A. Powell, Esq. and Hunton & Williams, 600 Peachtree Street N.E., Suite 4100, Atlanta, GA 30308, counsel for defendants.

This matter is before the court upon defendants' motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, defendants' motion is granted.

**BACKGROUND**

This action arises out of an employment relationship between plaintiff Derek Reiter ("Reiter") and defendant Recall Secure Destruction Services, Inc. ("Recall"). Recall, a division of

defendant Recall Corporation, specializes in confidential document management, storage and destruction. To market its document management and storage systems, Recall employs a team of sales executives to build business by soliciting new accounts. Recall sales executives "divide time between prospecting and selling to new customers as well as renewing and growing existing revenues for key customers," with the majority of their time "spent on developing new sales opportunities." (Reiter Dep. Ex. 14.) Recall expects sales executives to make an average of 75 to 100 prospecting cold calls each week, follow up with existing customers to sell other Recall services, log all activities into a sales activity database on a daily basis and meet annual sales quotas. (See id. at 54-58, 64-65.)

Along with an annual salary, sales executives could earn commissions and quarterly bonuses. (Id. Ex. 13.) In July 2005, Recall introduced the 2006 Compensation Plan (the "Plan"), which set out the system for determining sales executives' performance goals, award opportunities, and salaries during the coming year. As detailed in the Plan, Recall awarded commissions for each new contract a sales executive established with a new client, as long as the contract met certain eligibility requirements. (Id.) Commission rates were based on invoiced sales volume, with credit for the sale recognized in the first month service was invoiced. (Id.) The Plan limited eligibility for commissions, however,

noting that no "commissions or bonuses will be paid on any business closed or invoiced after the date of termination or reassignment." (Id.) That provision mirrored Recall's Employee Handbook policy that a sales executive must be an employee of the company on the date a commission is due to be paid in order to be eligible to receive the commission. (Id. Ex. 6 at 41.)

Recall hired Reiter as a sales executive on October 13, 2003. Reiter earned an annual $40,000 salary, but there was no term of employment contained in Reiter's job offer letter. Instead, both the job offer letter and Recall's employee handbook specified that Recall is an at-will employer. (See id. Exs. 4, 6.) During his tenure at Recall, Reiter received poor performance reviews and warnings on multiple occasions. In January 2005, Reiter's supervisor issued him a written warning that detailed concerns about quota attainment and pipeline[1] performance and instructed Reiter to comply with a sales performance improvement plan. (Id. Exs. 7, 8.) A year later, in March 2006, Reiter's new supervisor, Wes Whitelock ("Whitelock"), issued Reiter a verbal warning concerning his failure to maintain quota and pipeline goals and to log his activities. Recall documented both warnings on counseling forms, which Reiter signed. Each counseling form noted that if Reiter's poor performance was not corrected, Recall reserved the

---

[1] The "pipeline" refers to new contacts and potential business opportunities in the works. (See Reiter Dep. at 94.)

right to "further disciplinary action, up to and including termination." (Id.)

Reiter continued to miss cold calling and quota requirements, and on June 12, 2006, Whitelock met with Reiter and offered him a severance package. Reiter refused. He had been working for nearly two years to secure an account with United Health Services, Inc. ("United Health"), and he was confident that landing the account would satisfy his revenue quota for the year. Reiter secured the deal with United Health and logged it as a "closed won" account on June 22, 2006. United Health signed a master service agreement with Recall on June 27, 2006. Reiter attached a $350,000 revenue amount to the "win," although Recall did not earn or invoice revenue from the deal before the end of the fiscal year, and the agreement guaranteed no minimum amount of business or revenue. The United Health account first invoiced in August 2006 and eventually produced between $70,000 and $174,000 in revenue during its first fiscal year. Recall terminated Reiter on June 30, 2006, and paid him no commission for the United Health deal.

On September 22, 2006, Reiter filed an action in Anoka County District Court against Recall alleging violations of Minnesota Statutes §§ 181.145 and 181.933, wrongful termination, unjust enrichment and promissory estoppel. Recall removed the action to

federal court on October 31, 2006, and now moves for summary judgment on Reiter's wrongful termination, breach of contract and Minnesota Statutes § 181.145 claims.[2]

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could

---

[2] Recall moved unopposed for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on March 15, 2007, and the court dismissed with prejudice Reiter's unjust enrichment, promissory estoppel and Minnesota Statutes § 181.933 claims.  Reiter then amended his complaint to include a breach of contract claim.

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II.  Wrongful Termination**

In Minnesota, unless "otherwise agreed between the parties, the employment relationship is at will." Borgersen v. Cardiovascular Sys., Inc., 729 N.W.2d 619, 625 (Minn. Ct. App. 2007). This means that the relationship "can be terminated for any reason or for no reason at all." Nelson v. Productive Alternatives, Inc., 715 N.W.2d 452, 454 (Minn. 2006). Generally, an at-will employee has "no claim for wrongful termination or breach of an employment contract once discharged." Bolander v. Bolander, 703 N.W.2d 529, 545 (Minn. Ct. App. 2005). There are,

however, several statutory exceptions[3] to the at-will rule, and the Minnesota Supreme Court has on one occasion recognized a common-law cause of action for wrongful discharge in violation of public policy. See Nelson, 715 N.W.2d at 454-55 (citing Phipps v. Clark Oil & Refining Corp., 408 N.W.2d 569 (Minn. 1987)). Before a court will recognize a common-law cause of action, the policy at issue must be clear. Moreover, a court is generally "reluctant to undertake the task of determining public policy since [that] role is usually better performed by the legislature." Nelson, 715 N.W.2d at 456, 457 n.5.

Reiter argues that Recall violated the policy against an employer terminating a sales employee to avoid paying a commission established in Gunderson v. North American Life & Casualty Co., 78 N.W.2d 328 (Minn. 1956). Gunderson discusses the right to commissions, but it does not establish the clear public policy that Reiter advocates. Instead, it stresses that termination in good faith is acceptable. Here, Reiter's failure to meet cold call and quota requirements demonstrates that Recall had good faith reasons to terminate him. Further, as the Minnesota Supreme Court clarified in Nelson, it is better left to the legislature to determine public policy. See 715 N.W.2d at 457 n.5; see also Anderson-Johanningmeier v. Mid-Minnesota Women's Ctr., Inc., 637

---

[3] The statutory exceptions all relate to employer retaliation. See Minn. Stat. §§ 176.82, 181.75, 181.932 and 593.50. None is applicable here.

7

N.W.2d 270, 277-78 (Minn. 2002) (Blatz, C.J., concurring); Haskin v. Ne. Airways, Inc., 123 N.W.2d 81, 86 (Minn. 1963). For these reasons, the court finds that Reiter's termination did not violate clearly established public policy, and summary judgment is warranted on Reiter's unlawful termination claim.

**III. Minnesota Statutes § 181.145 and Breach of Contract**

Reiter argues that Recall violated § 181.145 and breached "either an expressed or an implied compensation contract" when it fired Reiter without paying him a commission for the United Health deal. (Amend. Compl. at 3.) Pursuant to Minnesota Statutes § 181.145, when a company employing a commission salesperson terminates that salesperson, "the employer shall promptly pay the sales person, at the usual place of payment, commissions earned through the last day of employment." Reiter maintains that whether he actually "earned" the commission is an issue of fact that renders summary judgment inappropriate. Under the Plan, however, there is no dispute about when a commission is earned. The Plan provides that "[c]redit for the sale will be recognized in the first month service is invoiced" and that "[c]ommissions are paid on invoiced revenue only." (See Reiter Dep. Ex. 6 at 2, 5.) Thus, a sales executive cannot "earn" a commission for Recall purposes until it is invoiced. Moreover, § 181.145 defines "commissions earned through the last day of employment" as commissions due "for services or merchandise which have actually been delivered to and

8

accepted by the customer by the final day of the salesperson's employment." Reiter has failed to demonstrate that United Health had received any Recall services by June 30, 2006 - the date of his termination. Finally, and most important, § 181.145 is "only applicable to situations ... where disputed commissions are owed an independent contractor, not an employee." Holman v. CPT Corp., 457 N.W.2d 740, 742-43 (Minn. Ct. App. 1990). Because Reiter was a Recall employee - not an independent contractor - § 181.145 is inapplicable in this case. Accordingly, Recall did not violate § 181.145 when it fired Reiter.

As to the breach of contract claim, Reiter argues that the 2006 Compensation Plan served as an employment contract that Recall breached. The Plan, however, explicitly states that it is not an employment contract but rather a description of the terms, policies and procedures associated with the compensation program. (Reiter Dep. Ex. 13 at 9.) The fact that Reiter and Whitelock signed the document does not abrogate the express terms of the Plan. Moreover, Reiter has not demonstrated that Recall breached the Plan. Indeed, Recall did not award Reiter for the United Health deal because the Plan's provisions on commission payments did not allow for a commission under the circumstances. Therefore, summary judgment is warranted on Reiter's breach of contract claim.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. No. 36] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 22, 2008

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court